UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAKEITH MCCOY, | Case No. 1:15-cv-00768-ADA-HBK (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT[1] |
| v. | |
| A. HOLGUIN, et al., | FOURTEEN-DAY OBJECTION PERIOD |
| Defendants. | (Doc. No. 194) |

Pending before the Court is Defendants G. Arellano, E. Barron, O. Delgado, S. Lomas, Mayfield, Montanez, V. Moore, and Moreno's motion for summary judgment with supporting documents. (Doc. No. 194 through 194-14, "MSJ"). Plaintiff filed an Opposition, (Doc. No. 212), and Defendants filed a Reply. (Doc. No. 213). For the reasons stated below, the undersigned recommends the district court deny Defendants' MSJ.

**I. BACKGROUND**

Plaintiff LaKeith McCoy ("Plaintiff" or "McCoy"), a former state prisoner, initiated this action by filing a pro se complaint under 42 U.S.C. § 1983. (Doc. No. 1)  Plaintiff is proceeding

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).  The instant motion was filed only behalf of Defendants G. Arellano, E. Barron, O. Delgado, S. Lomas, Mayfield, Montanez, V. Moore, and Moreno.

on his Second Amended Complaint ("SAC") alleging Eighth Amendment excessive use of force claims against twelve Defendants and Eighth Amendment failure to intervene claims against another seven Defendants. (*See* Doc. No. 15). The events giving rise to the SAC occurred at California Correctional Institution ("CCI") in Tehachapi, CA. (*Id.*).

After motions practice and settlement efforts, Defendants G. Arellano, E. Barron, Hollis Bennett, C. Casillas, DeLuna, O. Delgado, J. Gonzales, A. Holguin, Holland, Kilmer, D. King, S. Lomas, A. Martinez, C. Martinez, Mayfield, Montanez, V. Moore, Moreno, and Santa Maria filed an exhaustion-based Motion for Summary Judgment. (Doc. No. 75). The prior magistrate judge issued a Findings and Recommendation ("F&R") to grant the motion as to Defendants Holland, Kilmer, Santa Maria, Bennett and DeLuna, and the District Court adopted the F&R in part, dismissing Defendants Holland, Kilmer, Santa Maria and DeLuna. (Doc. No. 96).

Defendants G. Arellano, E. Barron, O. Delgado, S. Lomas, Mayfield, Montanez, V. Moore, and Moreno thereafter filed the instant motion for summary judgment after obtaining leave from the Court. (Doc. No. 194). Each Defendant submits a declaration and supporting exhibits. (Doc. Nos. 194-4 to 194-12). The staff sign-in sheets and incident reports attached by Defendants are authenticated in a separate declaration by N. Hernandez, the litigation coordinator for CCI. (Doc. No. 194-9).

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1);

2

*Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

The court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Conclusory or speculative testimony in affidavits and supporting papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see* Fed. R. Civ. P. 56(c)(2). Furthermore, the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). While prisoners are relieved from strict compliance, they still must "identify or submit some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. Plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). However, a complaint's conclusory allegations, unsupported by specifics facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley Transportation Agency,* 261 F.3d 912, 922 (9th Cir. 2001). And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P. 56(e)(2).

The undersigned has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission of an argument, document, paper, or objection is not to be construed that the undersigned did not consider the argument, document, paper, or objection. Instead, the undersigned thoroughly reviewed and considered the evidence it

deemed admissible, material, and appropriate for purposes of issuing this Findings and Recommendations on Defendant's MSJ.

### III.  ANALYSIS

#### A.  Allegations in Operative Complaint

The SAC alleges that Plaintiff was beaten by correctional staff at CCI during two separate but related incidents, both of which occurred on March 12, 2015.  The SAC alleges the attacks occurred shortly after Plaintiff filed a grievance regarding inadequate access to showers, haircuts, and laundry in his housing unit and had a "shouting match" with Defendant Casillas where Plaintiff called Casillas a "bitch."  (Doc. No. 15 at 4-6 ¶¶ 11-16).  In the first incident, Plaintiff was handcuffed and escorted by Correctional Officer ("CO") Casillas on the way to the law library.  Upon entering a hallway, Plaintiff saw other correctional staff—COs Moore, Holguin, and King—standing there.  CO Casillas said "what's up now [expletive]?" and threw Plaintiff into a wall.  (Doc. No. 15 at 8 ¶ 24).  COs Holguin and Casillas then began punching Plaintiff with closed fists in the back of his head while CO Holguin asked "who's the bitch now?"  (*Id*. ¶ 25).  COs Moore and King joined the other two COs in attacking Plaintiff with their fists and batons, and CO Holguin sprayed an entire can of pepper spray into Plaintiff's eyes and ears.  (*Id*. ¶ 26, 10 ¶ 31).  The altercation eventually ended up outside, where COs Holland, Kilmer, S. Lomas, and Santa Maria witnessed the beating but did not intervene.  (*Id*. at 9 ¶ 28).  When Plaintiff was laying prone on the floor, CO Lomas grabbed Plaintiff's left leg and began twisting and bending it.  (*Id*. at 10-11 ¶ 33).

At this point, COs J. Gonzales and A. Martinez and medical staff arrived.  COs Gonzales and A. Martinez grabbed Plaintiff's handcuffed hands and attempted to raise them over his head in a technique called a "chicken wing." (*Id*. at 11 ¶¶ 34-35).  They then escorted Plaintiff to a holding cell in Dining Hall #4.  (*Id*. at 12 ¶ 36).  There, CO Gonzales shoved Plaintiff into the cell, causing Plaintiff to hit his head on the back of the cell.  (*Id*.).  Defendant Gonzales pulled Plaintiff out of the cell and then shoved him into the cell again, causing Plaintiff to once more hit his head.  (*Id*.).  Plaintiff was pulled out of the cell a third time and pushed onto the ground, where he was punched and sat on by Defendants A. Martinez, Delgado, Barron, Montanez,

4

Mayfield, and Moreno. (*Id*. at 12-13 ¶¶ 36-37). Defendants Bennett, DeLuna, G. Arellano, and C. Martinez witnessed this second incident but did not intervene. (*Id*.).

**B. Undisputed Facts and Law**

As previously stated, the undersigned considers the entire record and deems only those facts true which are properly supported by evidence. The undersigned finds the following material facts to be either undisputed, or, following the undersigned's review of the evidence submitted, are deemed undisputed, unless otherwise indicated.

- On March 12, 2015, Plaintiff was incarcerated at California Correctional Institution in Tehachapi, CA. (Doc. No. 194-3 at 1 ¶ 1; Doc. No. 212 at 12 ¶ 1).
- On March 12, 2015, at approximately 8:30 a.m., correctional officers Holguin and Casillas were escorting McCoy from his cell in Facility A, Building 6 on their way to the law library. (Doc. No. 194-3 at 2 ¶ 2; Doc. No. 212 at 13 ¶ 2).
- During an incident outside of Building 6 involving Plaintiff, an officer called a code 1 alarm. (Doc. No. 194-3 at 2 ¶ 5; Doc. No. 212 at 13 ¶ 5).
- After McCoy was under control and restrained outside Building 6, Officer J. Gonzalez and A. Martinez escorted him to dining hall number 4. (Doc. No. 194-3 at 2 ¶ 6; Doc. No. 212 at 13 ¶ 6).
- During the incident in the dining hall, Officer Gonzalez called a code 1 alarm. (Doc. No. 194-3 at 2 ¶ 9; Doc. No. 212 at 14 ¶ 9.)
- At his deposition, McCoy testified that he had not had any negative interactions with Defendants Barron, Delgado, Mayfield, Moreno or Montanez before March 12, 2015. (Doc. No. 194-13 at 5-12; Doc. No. 212 at 21 ¶ 45).

**C. Disputed Material Facts**

The following facts, concerning the nature of Plaintiff's interactions with correctional officers outside building 6 and in dining hall 4 on March 12, 2015 are disputed.

Per Plaintiff:

- During the escort to the law library, CDCR staff members used force against Plaintiff in the rotunda of Building 6 and outside the door of Building 6. (Doc.

5

No. 212 at 13 ¶ 3; *see also* Doc. No. 15 at 9-11, ¶¶ 27-33).

- Defendant Moore used force against Plaintiff in the rotunda of Building 6. (Doc. No. 212. at 14 ¶ 10).
- Defendant Lomas used force against Plaintiff outside the door to Building 6. (Doc. No. 212 at 14 ¶ 11; *see also* Doc. No. 15 at 10-11 ¶ 33).
- Defendants Lomas and Arellano were present while other CDCR staff used force against Plaintiff outside the door to Building 6 and failed to intervene. (Doc. No. 212 at 14-15, ¶¶ 13-14).
- Defendants Barron, Delgado, Montanez, Mayfield, and Moreno used excessive force against Plaintiff in the dining hall. (Doc. No. 212 at 15 ¶¶ 16, 18; 16 ¶¶ 22-23; 17 ¶ 27; 19 ¶ 39; *see also* Doc. No. 15 at 12-14, ¶¶ 36-39).

Per Defendants:

- As Plaintiff and Defendants Casillas and Holguin left the rotunda of Building 6 and entered the yard, Plaintiff attacked Officer Holguin. (Doc. No. 194-2 at 3). A code 1 alarm sounded over the officers' radios. (*Id.*). Defendants Casillas and Holguin used OC spray and physical force to bring McCoy under control. (*Id.*).
- Sergeant C. Martinez arrived at the scene and ordered officers J. Gonzalez and A. Martinez to escort McCoy to dining hall number 4 for pepper spray decontamination and medical evaluation. (*Id.*).
- Once in the dining hall, McCoy again attacked prison staff in an attempt to escape being placed in a holding cell. (*Id.*). Another code 1 alarm sounded. (*Id.*). Gonzalez and A. Martinez used physical force to bring McCoy under control. (*Id.*).
- Defendant Barron was not at CCI on March 12, 2015; it was his day off. (Doc. No. 194-3 at 3 ¶ 15). Defendant Barron did not use force against McCoy on March 12, 2015 and did not interact with McCoy at all that day. (*Id.* ¶ 16).
- On March 12, 2015, Defendant Delgado was assigned as the complex control officer for Facility A, working in a booth known as "the bubble" from which the

officer controls the doors leading between the A-side (Buildings 1-4) and the B-side (Buildings 5-8) of Facility A. (*Id*. ¶ 17).

- When the alarms sounded on March 12, 2015, Delgado was required to remain in the booth, which he did. There is no view from the booth to the front of building 6, or into dining hall 4. (*Id*. ¶ 18).
- Delgado did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date. (*Id*. at 4 ¶ 19).
- Because Delgado did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents. (*Id*. ¶ 20).
- On March 12, 2015, Defendant Mayfield was assigned as the yard officer for the building 5 Security Housing Unit (SHU) yard. (*Id*. ¶ 21).
- When the alarms sounded on March 12, 2015, Mayfield was required to respond to the scenes of the incidents. Before Mayfield could arrive at the scenes, the use of force incidents were over. (*Id*. ¶ 22).
- Mayfield did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy that day. (*Id*. ¶ 23).
- Because Mayfield did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents. (*Id*. ¶ 24).
- On March 12, 2015, Defendant Montanez was assigned as the floor officer 1 for Facility A, building 8. (*Id*. ¶ 25).
- When the alarms sounded on March 12, 2015, Montanez was required to respond to the scenes of the incidents. Before Montanez could get to the scenes, the use of force incidents were over. (*Id*. ¶ 26.)
- Montanez did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy that day. (*Id*. ¶ 27).
- Because Montanez did not use force against McCoy on March 12, 2015, and did

7

1 | not observe force being used against McCoy on that date, he did not write a report
2 | regarding the incidents. (*Id*. at 5 ¶ 28).

- On March 12, 2015, Defendant Moore was assigned as the search and escort officer for building 6 on Facility A. (*Id*. ¶ 29).
- When the alarms sounded on March 12, 2015, Moore was required to respond to the scenes of the incidents. Before Moore could get to the scenes, the use of force incidents were over. (*Id*. ¶ 30).
- Moore did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy that day. (*Id*. ¶ 31).
- Because Moore did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents. (*Id*. ¶ 32).
- On March 12, 2015, Defendant Lomas was assigned as the search and escort officer for building 5 on Facility A at CCI. (*Id*. ¶ 33).
- When the alarms sounded on March 12, 2015, Lomas was required to respond to the scenes of the incidents. Before Lomas could get to the scenes, the use of force incidents were over. (*Id*. ¶ 34).
- Lomas did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy that day. (*Id*. ¶ 35).
- Because Lomas did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents. (*Id*. ¶ 36).
- On March 12, 2015, Defendant Moreno was assigned as the floor officer 1 for building 7 on Facility A at CCI. (*Id*. at 6 ¶ 37).
- When the alarms sounded on March 12, 2015, Moreno was required to respond to the scenes of the incidents. Before Moreno could get to the scenes, the use of force incidents were over. (*Id*. at 6 ¶ 38).
- Moreno did not use force against McCoy on March 12, 2015, and did not observe

force being used against McCoy that day.  (*Id*. ¶ 39).

- Because Moreno did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents.  (*Id*. ¶ 40).
- On March 12, 2015, Defendant Arellano was assigned as the building sergeant for buildings 7-8, Facility A at CCI.  (*Id*. ¶ 41).
- When the alarms sounded on March 12, 2015, Arellano was required to respond to the scenes of the incidents.  Before Arellano could get to the scenes, the use of force incidents were over.  (*Id*. ¶ 42).
- Arellano did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy that day.  (*Id*. ¶ 43).
- Because Arellano did not use force against McCoy on March 12, 2015, and did not observe force being used against McCoy on that date, he did not write a report regarding the incidents.  (*Id*. ¶ 44).

**D. Eighth Amendment Excessive Use of Force and Failure to Intervene**

Prison officials who use excessive force against an inmate violate the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to

9

1  cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9.

2  Correctional officials have an affirmative duty to intervene to protect those in custody from constitutional abuses by correctional colleagues. *United States v. Reese*, 2 F.3d 870, 887-88 (9th Cir. 1993). An official's failure to intervene, if provided an opportunity to do so, can violate a prisoner's Eighth Amendment rights. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *see also Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1163 (N.D. Cal. 2009) ("A reasonable officer could not have reasonably but mistakenly believed that he had no duty to intervene to stop another officer in their immediate presence from inflicting excessive force on a subject when they could have prevented it."). "[T]he core judicial inquiry" is whether the prison officer either, on one hand, failed to intervene in a good-faith effort to maintain or restore discipline or, on the other hand, maliciously and sadistically failed to intervene to cause harm. *Stevenson v. Holland*, 2017 WL 2958731, at *13 (E.D. Cal. July 11, 2017). The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

A.  <u>Plaintiff's Account of March 12, 2015</u>

As a pro se litigant, Plaintiff may rely on the facts contained in a verified complaint, which in this case (Plaintiff's SAC) describes in detail the actions of each Defendant on March 12, 2015. (See Doc. No. 15 at 7-14); *see also Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). In opposing summary judgment, Plaintiff also relies on his own declaration, Defendants' interrogatory responses, and the declaration of Joshua Howard, a fellow inmate. (See Doc. No. 212 at 24-130).

The SAC asserts that all moving Defendants either used excessive force against Plaintiff,

1   failed to intervene while others used excessive force against Plaintiff, or both.  (*See generally*
2   Doc. No. 15).  In Plaintiff's account, he did not pose any threat to Defendants Holguin, Casillas,
3   Moore, and King, nor was he resisting orders when they initially used force against him in the
4   hallway of Building 6, punching him in the back and the back of the head.  (*Id*. at 7-8 ¶¶ 17-25).
5   Because Plaintiff was handcuffed and arguably did not pose a threat to Defendants nor resisting
6   orders, the force used against him was not applied in a good faith attempt to restore or maintain
7   order. *See Hudson*, 503 U.S. at 6-7.  Further, the offensive comments made by Defendants during
8   the initial attack support an inference that they used force against Plaintiff maliciously and
9   sadistically to cause harm, as does the fact that they repeatedly punched Plaintiff in the back of
10  the head while he was handcuffed.  (*Id*. at 8 ¶¶ 25-26).

   Defendant Holguin's use of an entire can of pepper spray on Plaintiff also constitutes
12  excessive force.  The Ninth Circuit has ruled that the "use of [tear gas] in small amounts may be a
13  necessary prison technique if a prisoner refuses after adequate warning to move from a cell or
14  upon other provocation presenting a reasonable possibility that slight force will be required."
15  *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).  However, "'[i]t is generally recognized
16  that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas, or other
17  chemical agents in quantities greater than necessary or for the sole purpose of inflicting pain.'"
18  *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 763
19  (4th Cir.1996)) (emphasis omitted); s*ee also Furnace v. Sullivan*, 705 F.3d 1021, 1025 (finding
20  Eighth Amendment violation where officer discharged can of pepper spray until empty, and
21  another officer joined in).  Here, there is no indication that Plaintiff was not already under control
22  or that pepper spray was necessary to subdue him, nor did Defendant Holguin warn Plaintiff
23  before using pepper spray on him.  Thus, Holguin's use of an entire can of pepper spray was an
24  excessive use of force.  *See Furnace, 705 F.3d at 1025; see also Spain,* 600 F.2d at 195.

25  The SAC alleges Defendant S. Lomas and other staff came out of housing unit 5 into the
26  yard at this time and "watch[ed] the beating" but did not intervene. (*Id*. at 9 ¶ 29).  Based on the
27  facts alleged, at this point Defendants Holguin, Casillas, Moore, and King were beating a
28  handcuffed inmate with their batons and Defendant Lomas was close enough to have an

11

opportunity to intervene but did not do so.  Further, after Plaintiff was lying prone on the ground, Defendant Lomas grabbed Plaintiff's left leg, twisting and bending it.  (*Id*. at 10-11 ¶ 33).  Because Plaintiff was prone on the floor, had just been pepper sprayed and beaten by four other correctional officers, he was not in a position to harm any of the Defendants, who far outnumbered him.  (*Id*. at 10-11, ¶¶ 31-33).  Thus, Lomas did not apply force in a good faith effort to restore or maintain discipline but seemingly maliciously and sadistically to cause further harm to Plaintiff.  The SAC alleges Plaintiff later suffered a swollen and bruised left ankle with cuts from Defendant Lomas' hands, and severe knee pain in his left knee.  (*Id*. at 14 ¶ 40).

After the initial use of force incident, Defendants J. Gonzalez and A. Martinez lifted Plaintiff's handcuffed hands behind his back toward his head in a painful position known as a "chicken wing" and transported Plaintiff to dining hall #4.  (*Id*. at 11 ¶ 34).  At this point, Plaintiff had been beaten with fists by four officers, pepper sprayed, and had his left leg violently twisted.  There is no indication he was resisting orders or Defendant Gonzalez and Martinez's attempts to transport him.  The abusive use of handcuffs can constitute excessive force in violation of the Eighth Amendment.  *See Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989); *Meredith v. Erath*, 342 F.3d 1057, 1060 (9th Cir. 2003); *Wall v. Cnty. of Orange*, 364 F.3d 1107 (9th Cir. 2004).  These cases establish that an officer cannot use more force than necessary to restrain an individual.  Here, accepting the Plaintiff's version of facts and drawing all reasonable inferences in his favor, because Gonzalez and Martinez pulled Plaintiff's hands into a painful position to transport him when the facts reflect no need to do so, their actions constitute excessive use of force.

Once in dining hall #4 and in front of the dining hall holding cell, Defendant Gonzalez shoved Plaintiff into the cell hard enough that he hit his head against the back wall of the cell.  (*Id*. at 12 ¶ 36).  Gonzalez repeated this a second time, again causing Plaintiff to hit his head on the back of the cell.  (*Id*.).  Defendant Arellano and another officer witnessed this and did not intervene.  (*Id*.).  Defendant Gonzalez pulled Plaintiff out again and threw him on the floor.  At that point, Defendants Delgado, Barron, Montanez, Mayfield, and Moreno started punching Plaintiff "wherever they could find unprotected body parts while he was on the ground" and Defendant A. Martinez kicked Plaintiff "in his left side in the ribs."  (*Id*. at 13 ¶ 37).  Accepting

Plaintiff's version of facts as true, Defendants Delgado, Barron, Montanez, Mayfield, and Moreno all used force on Plaintiff when he was not resisting or otherwise threatening anyone, thus their force was apparently applied maliciously and sadistically to cause harm in violation of the Eighth Amendment.

After the incident, Plaintiff describes having numerous injuries including:

> a swollen and bruised left ankle . . . cuts and numbness to both wrist [sic], swollen left knee along with cuts to the sides of both knees, redness, swelling, and an abrasion to the left thigh . . . injury to the left side of his back, lacerations to the left side of his head, concussion, swollen right jaw, bruising to the right back arm . . . Plaintiff was blinded, partially, by the pepper spray which lasted approximately three weeks, and Plaintiff suffered from swelling and pain to the back of his head from being repeatedly punched.

(*Id*. at 14 ¶ 40). The detailed and significant injuries Plaintiff documents support an inference that the force used by Defendants was excessive and far beyond any that may have been necessary to restore or maintain order. *See Hudson*, 503 U.S. at 7.

If accepted as true, Plaintiff's account of the interactions on March 12, 2015—multiple beatings inflicted on Plaintiff while he was handcuffed and not resisting or ignoring orders— could convince a reasonable juror that moving Defendants Moore, Lomas, Delgado, Barron, Montanez, Mayfield, and Moreno used excessive force against Plaintiff, and that moving Defendants Lomas and Arellano failed to intervene in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

B. <u>Defendants' Account of March 12, 2015</u>

In response to Plaintiff's allegations, each moving Defendant contends that they neither used excessive force against Plaintiff nor did they observe force being used against him. (*See generally* Doc. Nos. 194-4 to 194-12). Thus, they do not respond with a detailed account of the incidents described in the SAC but with categorical denials that they were present for the events in question. In Defendant Barron's case, he avers that he was not even at CCI on the date in question. (*See* Doc. No. 194-4). The other Defendants assert that they reported to one or both of the scenes of uses of force against Plaintiff but arrived after any uses of force had ended. (*See* Doc. Nos. 194-5 to 194-12). In support of their accounts, each Defendant relies on their own

1    declarations and the staff sign-in sheets indicating their assignments for March 12, 2015 (or in
2    Barron's case, the fact that his name does not appear on the staff sign-in sheet).  As to Defendants
3    Arellano, Delgado, Montanez, Moore, Lomas, Mayfield, and Moreno, Defendants rely on the fact
4    that none of them completed an 837-C incident report, which they would have been required to
5    complete if they had either used force or observed others using force on Plaintiff.

6             C.  <u>Defendants Fail to Establish the Absence of a Genuine Issue of Material Fact</u>

7             Defendants' primary evidence in support of summary judgment is their own self-serving
8    declarations that they were not present when force was being used and thus could not have
9    committed any of the alleged constitutional violations.  Defendants point to the fact that if they
10   had used force on March 12, 2015 or witnessed force being used, they would have prepared an
11   837-C Incident Report to document it.  (*See* Doc. Nos. 194-4 to 194-12).  The Court is
12   unpersuaded by this argument, particularly given the lack of any direct evidence corroborating
13   Defendants' accounts.  Defendant Barron, for example, offers only his own testimony and a staff
14   sign-in sheet where his name is absent.  (*See* Doc. No. 194-3).  He might be expected to have
15   offered an affidavit by a supervisor or other knowledgeable person to attest that he was not
16   present at work that day or a documentation showing dates worked.  Indeed, despite at least 18
17   prison officials admitting to being present at some point for the incidents in question, none of the
18   Defendants offers a single corroborating eyewitness account to corroborate that the other
19   Defendants were not present.

20            It is well-settled that a conclusory, self-serving affidavit, lacking detailed facts and any
21   supporting evidence, is insufficient to create a genuine issue of material fact.  *F.T.C. v. Publ'g*
22   *Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) (citing
23   *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993)).  Such an affidavit is likewise
24   insufficient, without more, to establish the *absence* of a genuine issue of material fact.  Here,
25   Defendants' affidavits are each virtually identical, consist of conclusory statements regarding
26   their whereabouts and actions on March 12, 2015, and offer only weak circumstantial evidence in
27   support.  None of the Defendants offers a detailed response to the allegations in Plaintiff's SAC.
28   Instead, they categorically deny that they were present for the events described and focus on the

deficiencies in Plaintiff's declaration in opposition to the MSJ.  (See Doc. No. 213 at 1-4).  As discussed further below, the Court finds this insufficient to show an absence of a genuine issue of material fact.

Even assuming Defendants have met their burden and Plaintiff must point to a genuine issue of material fact, Plaintiff has done so in the detailed factual allegations contained in his SAC.  Plaintiff has offered a detailed account of the incidents on March 12, 2015 "painting a picture entirely different from that described by the government."  *See United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres ("Eaton Acres"),* 904 F.2d 487 (9th Cir. 1990). Specifically, Plaintiff alleges that all eight moving Defendants, who claim to have been absent at the time, were involved in specific uses of force against him at particular locations at CCI. Plaintiff alleges that at different times specific Defendants slammed him into a wall, punched him in the back of the head, beat him with batons, used an entire can of pepper sprayed on him, twisted his leg, lifted him into a painful restraint hold, slammed him into a cell wall, and kicked him in his left side rib cage.  (*See* Doc. No. 15 at 7-14).  In Defendants Lomas' and Arellano's case, Plaintiff also alleges they were present and stood by while other prison staff used excessive force against Plaintiff.  (*Id*. at 9 ¶ 28; 12 ¶ 36).  While Plaintiff's account may be "hardly overwhelming" in the face of Defendants' numerous affidavits presenting a different account, "it would make a world of difference which version of events the trier of fact believes."  *Eaton Acres*, 904 F.2d at 492.  Therefore, the Court finds Plaintiff has at a minimum raised a genuine dispute of material fact as to whether moving Defendants were present for the uses of force on March 12, 2015 and whether they either used force or failed to intervene when they witnessed excessive force being used.

In their Reply, Defendants claim that the declaration attached to Plaintiff's Opposition is deficient because it does not explicitly state that it was made with personal knowledge and that the declarant is competent to testify to the matters stated, as required by Rule 56(c)(4) of the Federal Rules of Civil Procedure.  (Doc. No. 213 at 1-2).  Defendants also argue that Plaintiff's declaration is conclusory and lacks sufficient specificity to defeat summary judgment. (*Id*. at 2-4).

1    As noted above, the Ninth Circuit has "held consistently that courts should construe
2    liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary
3    judgment rules strictly." *Soto*, 882 F.3d at 872.  While Plaintiff's declaration does not explicitly
4    state that it was made on personal knowledge, the "requirements of personal knowledge and
5    competence to testify may be inferred from the declaration itself." *Jenkins v. Perry*, 2009 WL
6    3049318, at *2 (E.D. Cal. Sept. 18, 2009) citing *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d
7    999, 1018 (9th Cir. 1990).  Here, Plaintiff's personal knowledge of the facts alleged can be
8    inferred from Plaintiff's involvement in the events described.  Moreover, as noted above, to the
9    extent Plaintiff's declaration lacks sufficient detail to defeat summary judgment, the Court looks
10   to the facts alleged in Plaintiff's SAC, a verified complaint containing facts based on personal
11   knowledge, as an affidavit opposing summary judgment. *Lopez*, 203 F.3d at 1132 n.14.  While
12   Plaintiff's declaration is relatively sparse, the SAC, as noted above, states in detail the actions of
13   each Defendant on March 12, 2015 sufficient to carry his burden of showing a genuine dispute of
14   material fact.  (*See* Doc. No. 15 at 7-14).  Viewed liberally, with all inferences drawn in
15   Plaintiff's favor as this Court must do, the undersigned finds whether each of the moving
16   Defendants were present during the events complained of depends on a credibility contest
17   between Defendants and Plaintiff, which cannot be decided at the summary judgment stage but is
18   properly within the purview of a jury.
19        Accordingly, it is **RECOMMENDED**:
20        Defendants' Motion for Summary Judgment (Doc. No. 194) be DENIED.
21        ////
22        ////
23                              NOTICE TO PARTIES
24        These findings and recommendations will be submitted to the United States district judge
25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14)**
26   **days** after being served with these findings and recommendations, a party may file written
27   objections with the court.  The document should be captioned "Objections to Magistrate Judge's
28   Findings and Recommendations."  Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: __August 1, 2023__

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE