1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    LAKEITH LEROY MCCOY,                    No. 1:15-cv-00768-KES-HBK (PC)

12                    Plaintiff,              TENTATIVE AMENDED FINAL PRETRIAL
                                              ORDER
13            v.
                                              Deadlines:
14    A. HOLGUIN, et al.,
                                              Objections to Pretrial Order: **December 27,**
15                    Defendants.             **2024**

16
                                              Motion in Limine Filing: **January 14, 2025**
17                                            Oppositions: **January 28, 2025**

18                                            Exhibits due to Court: **February 18, 2025**

19
                                              Proposed Jury Instructions, Verdict Form, and
20                                            Voir Dire:  **February 11, 2025**
                                              Objections: **February 18, 2025**
21
                                              Trial Confirmation Hearing: **February 18,**
22                                            **2025, at 3:00 p.m.** Courtroom 6

23                                            Jury Trial: **February 25, 2025, at 8:30 a.m.**
24                                            Courtroom 6

25

26           On December 9, 2024, the Court conducted a final pretrial conference in this action.

27    Plaintiff Lakeith McCoy appeared pro se via Zoom; Jeremy Duggan appeared via Zoom as

28    counsel for Defendants G. Arellano, E. Barron, Hollis Bennett, C. Casillas, O. Delgado, J.

                                            1

Gonzales, A. Holguin, D. King, S. Lomas, A. Martinez, C. Martinez, Mayfield, Montanez, V. Moore, and Moreno. This matter is set for a jury trial on February 25, 2025, at 8:30 a.m. in Courtroom 6 before District Judge Kirk E. Sherriff. Having considered the parties' pretrial statements and views, the Court issues this tentative amended final pretrial order.

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983 against Defendants. This action is set for trial on Plaintiff's claims for Eighth Amendment excessive use of force against Defendants Barron, Casillas, Delgado, Gonzales, Holguin, King, Lomas, A. Martinez, Mayfield, Montanez, Moore, and Moreno, and for Eighth Amendment failure to protect against Defendants Arellano, Bennett, and C. Martinez. Doc. 233 at 1–2.

## I.   JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343. Jurisdiction is not contested. The events at issue took place in Kern County, California. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b). Venue is also not contested.

## II.   JURY

Plaintiff and Defendants demand a jury trial. The jury will consist of eight jurors.

## III. UNDISPUTED FACTS

1. Plaintiff is an inmate incarcerated by the California Department of Corrections and Rehabilitation ("CDCR").

2. Defendants are employees of CDCR and were acting within the scope of their employment during the events alleged by Plaintiff.

3. The events in dispute occurred on March 12, 2015.

## IV. DISPUTED FACTUAL ISSUES

1. Whether, as Plaintiff contends, Defendants Casillas, Holguin, Moore, and King attacked Plaintiff during a handcuffed transport.

2. Whether, as Plaintiff contends, Defendants Gonzales and A. Martinez dragged Plaintiff to a holding cell and used force against him, causing a concussion, and pinning him to the ground.

2

3.  Whether, as Plaintiff contends, Defendants Delgado, Barron, Montanez, Mayfield and Moreno punched Plaintiff, and whether Defendant A. Martinez kicked Plaintiff.

4.  Whether, as Plaintiff contends, Defendant Lomas grabbed Plaintiff's leg, twisting it and bending it backwards.

5.  Whether, as Plaintiff contends, Defendants C. Martinez, Arellano, and Bennett failed to intervene and protect Plaintiff.

6.  Whether, as Defendants contend, Plaintiff broke free from Defendant Casillas's grasp during a transport and attacked Defendant Holguin.

7.  Whether, as Defendants contend, Plaintiff again attacked officers after being initially restrained.

8.  Whether, as Defendants contend, correctional officers discovered two razor blades in Plaintiff's waistband.

9.  Whether, as Defendants contend, Plaintiff received prison disciplinary violations for, and was criminally prosecuted for, attacking an officer and possession of a weapon.

10. Whether the incident reports and prison disciplinary reports regarding the March 12, 2015, events are based on false statements by Defendants.

Plaintiff identifies the following disputed factual issues[1]:

1.  Leading up to the incident that gave rise to this action, Plaintiff did write the warden of the prison where he was housed at a grievance alerting her that the building staff, Defendants in this action, were not allowing prisoners to exchange dirty laundry for clean laundry, were not allowing prisoners to use the hair clippers to groom, were not giving prisoners the opportunity to shower, and were not providing "Inmate Request Forms" so that prisoners could address these or any other issues at the lowest level.  The grievance was then forwarded to Lieutenant

---

[1]  Plaintiff characterizes issues numbered 1 through 16 below as undisputed facts (Doc. 243 at 2–6); however, Defendants dispute all of Plaintiff's assertions (Doc. 241 at 2).

D. Calvillo who did before addressing the issue with Plaintiff, notify subordinate staff that Plaintiff had filed a Complaint against them.

2. On February 28, 2015, Lieutenant Calvillo called Plaintiff out of his cell to Dining Hall #3 to be interviewed regarding the grievance Plaintiff wrote to the warden. Plaintiff explained to Lt. Calvillo that he was being harassed because of the grievance; no action was taken.

3. On March 5, 2015, Plaintiff was handcuffed by Defendant Casillas and escorted back to the unit by Defendants Holguin and Casillas.

4. On March 12, 2015, Plaintiff was scheduled to attend the facility's law library. After breakfast, Defendant Casillas placed Plaintiff in handcuffs and led him down the stairs out of the section and into the hallway.  There were no inmates around. Staff were not threatened in any way.

5. Defendants King, Casillas, and Holguin admitted through their signed incident reports that they were in the hallway.

6. Plaintiff was struck by a baton and pepper sprayed by Defendants.  Plaintiff ended up outside the building, Facility 4A Building 6.  Defendant Holguin did use his baton and paper spray on Plaintiff; a handcuffed prisoner.  While Plaintiff was outside, someone sounded the alarm.  Plaintiff was hit full force on his back right arm and left thigh by Defendant Holguin.  Defendant Holguin unleashed an entire can of pepper spray in Plaintiff's eyes and ears at close proximity.  The force used was unbearable.

7. At no time did Defendants Holland, Kilmer, S. Lomas, or Santa Maria intervene to stop Defendants Moore, King, Holguin, and Casillas.[2]  Plaintiff was hit in his jaw. At the time of the assault, Plaintiff weighed approximately 158 pounds; 155 to be exact.

8. Defendants Hollis Bennett and Rachel DeLuna arrived with all medical

---

[2] Defendants Holland, Kilmer, and Santa Maria were dismissed from the action on March 26, 2018.  Doc. 96.

equipment.[3]  Defendants J. Gonzales and A. Martinez took Plaintiff by the arm while he was handcuffed and pulled his arms above his head.  He was taken to Dining Hall #4, which was approximately 10–15 yards away.  Defendants G. Arellano and C. Martinez's office is located in Dining Hall #4.  The method of pulling a prisoner's arms above his or her head while they are handcuffed is widely known as a "chicken wing" and if effectively applied will break the recipient's arms.

9. The cell door to place Plaintiff in the holding cell was opened.  Before placing Plaintiff in the holding cell, there was force used by Defendants Gonzales and Martinez.  Plaintiff suffered a concussion because of the force that was used.  Plaintiff was pulled out of the holding cell and thrown to the ground.  Plaintiff was pinned to the ground by at least one Defendant.  After this incident occurred, Plaintiff was placed in the holding cell.  While being pinned to the ground, Plaintiff was scarcely able to breath.

10. As a result of this incident, Plaintiff had a swollen and bruised ankle with cuts to the ankle, cuts and numbness to both wrists, swollen left knee along with cuts to the sides of both knees, redness, swelling, and an abrasion to the left thigh, injury to his left side of his back, lacerations to the left side of his head, concussion, swollen right jaw, bruising to the back of the right arm, Plaintiff was blinded by the pepper spray which lasted approximately three weeks, requiring Plaintiff to be treated by an eye doctor outside the prison.  Plaintiff suffered from swelling and pain to the back of his head.  Numerous teeth have been chipped.  Plaintiff had an ear lavage to remove the pepper spray that was in his ears.

11. Plaintiff suffers from knee pain in his left leg, muscle strains, herniated back disc, ringing and diminished hearing in his ears, inflammation in both eyes which had to be treated with steroid eye drops, head trauma, unaligned jaw, and chronic dry

---

[3]  Rachel DeLuna was dismissed from the action on March 26, 2018.  Doc. 96.

eyes.  All injuries were documented via photos, digital camera, digital interview, and medical reports.

12. Defendants filed an incident report beyond time constraints and in violation of policy and procedure.  Most of the Defendants previously named have failed to file a report to date.

13. There was never an adequate, available administrative remedy to redress these types of misconduct by staff throughout the prison.  The remedies are discretionary; however, Plaintiff was able to send the grievance to outside sources and or agencies.

14. Plaintiff's Rules Violation Report (CDC 115) was heard by Lt. D. Calvillo, but contrary to policy, no final copy was ever provided to Plaintiff, thus prohibiting him from knowing the findings and appealing the decision.  The matter was alleged to have been sent to the office of Internal Affairs.

15. Defendant Holguin received a broken hand the day of the incident consistent with what's called a "boxing fracture".

16. In Holt v. Nichols, 1:09-cv-00800-AWI-SAB (PC), Defendant Holguin admitted under penalty of perjury that, during his employment with C.D.C.R., he used O.C. pepper spray, and observed correctional staff use O.C. pepper spray on inmates. On each occasion where they have used O.C. pepper spray, or observed correctional staff use O.C. pepper spray on an inmate, the inmate had trouble seeing, opening his eyes, and breathing.  He experienced a burning sensation in his eyes, and he was disoriented; but within approximately forty-five minutes, all of the inmates' symptoms resolved.

17. While returning from Court on February 26, 2015, Plaintiff was questioned about the grievance by Defendants C. Casillas and D. King.  Plaintiff was told he should not have under any circumstance went over their heads and wrote the warden about their failure to carry out their duties; at which time Plaintiff explained he didn't want any problems and informed them that he wouldn't write any more

6

grievances.

18. On February 28, 2015, Plaintiff explained to Lt. D. Cavillo that staff had been tipped off about the grievance he wrote to the warden.

19. Defendants C. Casillas, D. King, and V. Moore waited on Defendant A. Holguin to return to work so they could formulate a plan to "punish" Plaintiff for exercising his right to file a grievance.  Upon returning to work Defendant Holguin did willfully become an active participant and conspirator.

20. While coming through the Release and Return unit of the prison from Court on March 5, 2015, Plaintiff noticed that Defendants Holguin and Casillas were standing at the desk conversing with correctional officer Barbosa, coincidentally. Defendant Holguin then stated, "here comes Deputy LaKeith," referring to Plaintiff in response to writing the grievance.  After being placed in the holding cell by transport staff, Defendant Casillas handcuffed Plaintiff and as they were walking by the Release and Return desk, correctional officer Barbosa stated, "hurry up and get back to the housing unit so McCoy can write those complaints!" At that time, Defendant Holguin began looking at Plaintiff and making rude comments.  Plaintiff told Defendant Holguin to not play with him and stop talking to him.

21. Upon arriving back at the housing unit, Plaintiff's cell had been searched and left in disarray.  Plaintiff respectfully asked Defendant Casillas, after being placed in the cell and uncuffed, who had searched the cell.  At that point Defendant Casillas became hostile and stated, "nobody searched your fucking cell, you little bitch!" He then slammed the tray slot and stated, "you're a fucking cell soldier, you're going to get yours!"  Plaintiff yelled out the door at Defendant Casillas, "you're a bitch!"

22. While escorting Plaintiff to the law library on March 12, 2015, Defendant Casillas had a tight grip on Plaintiff's arm, was breathing very hard, and let Plaintiff to the hallway in a hostile manner as was consistent with his character which was

1   evidenced from previous encounters.  There was no encounter besides the

2   grievance issues and the shouting match between Plaintiff and Defendant Casillas

3   that led to the complained of assault.  Staff was in no danger or threatened in any

4   way whatsoever.  The beating was solely the result of the grievance and the

5   shouting which does not, under any laws of the United States, constitute sufficient

6   provocation.  Immediately upon entering the hallway, Plaintiff saw Defendants V.

7   Moore, A. Holguin, and D. King standing in the hallway outside of their office

8   door.  Defendant Casillas asked Plaintiff, "what's up now motherfucker," and

9   aggressively threw Plaintiff into the wall in the hallway while he was defenseless

10   and handcuffed.

11   23. At that time, Defendants Holguin and Casillas began punching Plaintiff, full force,

12   in the back of the head full force with closed fists.  Defendant Holguin asked

13   Plaintiff, "who's the bitch now?"  All the while, Holguin and Casillas continued to

14   punch Plaintiff in the back of the head in cowardly fashion.  Defendants Moore

15   and King did unlawfully join Defendants Casillas and Holguin in brutally beating

16   Plaintiff while he was defenseless and handcuffed.  Plaintiff was continually and

17   repeatedly beat by this gang of correctional officers in such a cowardly fashion

18   while his back was turned.  Plaintiff was punched numerous times in the back and

19   in the back of the head.  On a few occasions, with malicious and evil intent,

20   defendants did strike Plaintiff with their batons.

21   24. The beating was so brutal, Plaintiff was beat toward the exit door, subsequently

22   ending up outside.  As a result, in a panic, someone sounded the alarm.

23   Defendants Holland, Kilmer, S. Lomas, and Santa Maria came out of housing unit

24   5 which was next door and watched the beating.  They did nothing to intervene.

25   There exists at the prison a strict code of silence which prohibits them from

26   intervening.

27   25. Plaintiff could not say or do anything.  He was knocked nearly unconscious and

28   could not conjure up enough strength or energy to open his mouth to talk.  These

8

acts were torturous.  Plaintiff was hit in his jaw on what felt like the back right side which left him nearly incapacitated and forced Plaintiff's eyes to roll into the back of his head.  Defendant Holguin unleased an entire can of pepper spray on Plaintiff.

26. No orders were issued for Plaintiff to get down or prone out.  This was a gang beating by rogue, properly supervised, correctional officers.  Defendants Holland, Kilmer, S. Lomas, Santa Maria did nothing more than watch.  As Plaintiff proned out on the ground, Defendant S. Lomas ran from behind Plaintiff, grabbed Plaintiff's leg, and began twisting, contorting, and bending Plaintiff's leg in an attempt to break it.  Plaintiff could see Defendant Lomas in his peripheral vision. He then backed up and congregated with all the other Defendants and started watching Plaintiff lay there in extreme pain while he was proned out.

27. Defendants J. Gonzales and A. Martinez grabbed Plaintiff by his hands and the middle of the handcuffs in an attempt to raise Plaintiff's arms above his head while being handcuffed from the back.  They led Plaintiff to Dining Hall #4 approximately 10–15 yards away at a gruelingly fast pace.  Defendants DeLuna and Bennett were in tow and watching this scene play out while laughing about the situation.  Upon arriving in Dining Hall #4, there were numerous correctional officers congregating including Defendants G. Arellano and C. Martinez who had walked out of their office which is located in Dining Hall #4.

28. Defendant Gonzales told Defendant A. Martinez, "hold on," before putting Plaintiff into the holding cell.  He then grabbed Plaintiff viciously by the back of the neck and shoved Plaintiff into the holding cell forcing Plaintiff to hit his head on the back of the cell.  He was pulled out and this was repeated a second time by the same Defendant Gonzales.  Defendants Bennett and DeLuna willfully stood by watching and observing this conduct while standing in Dining Hall #4, as well as Defendants G. Arellano and C. Martinez.

29. After being thrown to the back of the cell and sustaining a head injury, Plaintiff

9

1    was pulled out a final time and thrown to the ground.  Defendants C. Martinez and

2    G. Arellano were standing in front of Plaintiff allowing these actions to be carried

3    out.  Plaintiff was then sat on by O. Delgado, E. Barron, Montanez, Mayfield, and

4    Moreno who all began committing further atrocious acts of punching Plaintiff

5    wherever they could find unprotected body parts while he was on the ground.

6    Defendant A. Martinez, maliciously, sadistically with evil intent kicked Plaintiff in

7    the ribs.

8    30. Plaintiff cried out, "I didn't do anything."  Eventually Defendant G. Arellano told

9    Plaintiff, "if *WE* let you up, will you be cool and not try to retaliate?"  Upon

10   information and belief, this was said in a manner as to empower himself while at

11   the same time assure that Plaintiff would be quiet about the situation.  Plaintiff

12   assured him that he wouldn't do anything, and by stating he wouldn't do anything,

13   Plaintiff was under the impression that they wanted him to be completely silent

14   about the attack.

15   31. When Plaintiff was eventually taken to the facility clinic, Defendant Bennett did

16   wait approximately 30 minutes to an hour to see Plaintiff and when she finally did

17   see him, she came into the room and stated, "I'm not worried about no inmate;

18   only custody," meaning correctional staff.

19   32. The prison medical staff made jokes to the effect of, "you sure are doing good to

20   have been beat up by correctional officers" and "if your teeth are bothering you

21   that much, then you should just have them removed!"  Subsequently, Defendants

22   filed a false report stating that Plaintiff tried to run toward Defendant Holguin

23   while he was handcuffed.[4]

24   ///

25   ///

26   ///

27

28   [4]  Plaintiff also notes in a footnote: "Plaintiff was criminally charged and faced a potential life
sentence.  In March 2021, all charges were dismissed after five years."  Doc. 243 at 10–11, ¶ 1.

10

Defendants identify the following disputed factual issues:

1. Defendants dispute all of Plaintiff's allegations in his pre-trial statements.

2. Defendants contend that during an escort on March 12, 2015, Plaintiff broke away from Defendant Casillas's grasp, and charged Defendant Holguin, attacking him and injuring him.  Officers were required to use reasonable force to bring Plaintiff under control.

3. After Plaintiff was restrained, officers attempted to put Plaintiff into a holding cell. Plaintiff again attacked officers.  Officers again restrained Plaintiff, but discovered two razor blades in his waistband.

4. Plaintiff received disciplinary violations for attacking an officer and possession of a weapon.

## V.  DISPUTED LEGAL ISSUES

None listed.

## VI. DISPUTED EVIDENTIARY ISSUES

Defendants identify the following as disputed evidentiary issues:

1. Defendants do not anticipate disputes concerning admissibility of live or deposition testimony, physical or demonstrative evidence, or the use of special technology at trial, including computer animation, video discs, or other high technology.

Plaintiff identifies the following as disputed evidentiary issues:

1. After Discovery had closed, after the criminal case had been concluded, after many Motions To Compel Discovery, Defendants produced expert opinions which revealed they withheld Discovery in this matter and the criminal matter.  The expert relied on reports written by a Lieutenant, a Captain, and Associate Warden who all concluded in their final analysis that these Defendants violated policies before, during, and after the incident.  Plaintiff disputes the findings of the expert.

2. Plaintiff disputes the honesty of the incident reports written at the prison on the day of the incident.

3.   Plaintiff disputes Defendants reports that he kept tried to get off the ground by transitioning to his knees.  Plaintiff, since the year of 2011, has had a torn meniscus and injury to his patella tendon.  It is impossible for Plaintiff to perform these types of maneuvers with said injury.

VII.   MOTIONS IN LIMINE

The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id*.

In advance of filing any motion in limine, the parties shall meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.

Any motions in limine the parties intend to file must be filed with the Court no later than **January 14, 2025**.  The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.  Any opposition to the motion must be served on the other party and filed with the Court no later than **January 28, 2025**.  After reviewing the motions and any opposition briefs, the Court will notify the parties if a reply brief is necessary.  As such, parties shall **not** file any reply briefs without Court approval.  The Court will also notify the parties if it will hear argument on any motions in limine prior to the first day of trial.  The parties are reminded they may still object to the introduction of evidence during trial.

VIII.   SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6) Defendants provide the following information pertinent to tort and personal injury actions:

Plaintiff alleges that Defendants used excessive force or failed to protect him from other Defendants on March 12, 2015.  Plaintiff alleges a violation of the Eighth Amendment under 42 U.S.C. § 1983.  Defendants deny Plaintiff's allegations.  Defendants contend the force used was necessary.

Defendants are informed and believe that Plaintiff is thirty-nine years old.  Defendants deny Plaintiff suffered any significant injuries, other than exposure to O.C. Spray.  Plaintiff did not incur any medical expenses, did not suffer any disability, did not have any earnings before the incident, and did not suffer any earnings

12

1    loss after the incident.

2  Doc. 241 at 2–3.

3      IX. RELIEF SOUGHT

4        1.  Plaintiff seeks $1.5 million in compensatory damages from each Defendant

5           "jointly and severally," and $3 million in punitive damages against each Defendant

6           "jointly and severally."  Doc. 243 at 11.

7        2.  Defendants seek judgment in their favor and an award of costs.

8      X.  POINTS OF LAW

9        The claims and defenses arise under federal law.

10       1.      The elements of, standards for, and burden of proof in a claim of excessive force in

11  violation of the Eighth Amendment.

12       2.      The elements of, standards for, and burden of proof in a claim of failure to protect

13  in violation of the Eighth Amendment.

14       3.      The elements of, standards for, and burden of proof for an award of punitive

15  damages.

16       4.      The elements of, standards for, and burden of proof for the affirmative defense of

17  qualified immunity.

18        Plaintiff identifies the following points of law:

19        1.  Plaintiff does not anticipate there will be controversy in regards to any points of

20           law.  The legal theory this action proceeds on is an Eighth Amendment violation

21           for cruel and unusual punishment for use of excessive force as well as Defendants

22           failure to intervene in the use of excessive force.

23        Defendants identify the following points of law:

24        1.  Excessive Force

25        "[W]henever prison officials stand accused of using excessive physical force in violation

26  of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-

27  faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

28

1   Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); see also Whitley v. Albers, 475 U.S. 312, 320-21

2   (1986). Prison officials may also be liable if they had the opportunity to intervene to stop

3   excessive force by other officers and failed to do so. Cunningham v. Gates, 229 F.3d 1271, 1290

4   (9th Cir. 2000).

5          2.   Causation

6          In assessing the imposition of liability under § 1983, we must first ask "(1) whether the

7   conduct complained of was committed by a person acting under the color of state law; and (2)

8   whether this conduct deprived a person of rights, privileges, or immunities secured by the

9   Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on

10  other grounds, *Davidson v. Cannon*, 474 U.S. 344 (1986). There are two aspects to the second

11  inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or

12  immunities, and (2) the conduct complained of must have been *causally connected* to the

13  deprivation." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989), citing *Woodley v.*

14  *Town of Nantucket*, 645 F. Supp. 1365, 1369 n. 4 (D. Mass. 1986) (emphasis added). Section 1983

15  thus focuses the inquiry on whether an official's acts or omissions were the cause—not merely a

16  contributing factor—of the constitutionally infirm condition. *LaMarca v. Turner*, 995 F.2d 1526,

17  1538 (11th Cir. 1993). To be entitled to judgment on a failure to protect claim under the Eighth

18  Amendment, a plaintiff must show a causal relationship between his or her injury and the deliberate

19  actions of the defendant prison official. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The issue

20  of causation must be resolved by an individualized inquiry into each defendant's duties, discretion,

21  and ability to avert the threatened harm. *Id*. at 633–34. Plaintiff must prove: (1) that the specific

22  prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth

23  Amendment, and (2) that this indifference was the *actual and proximate cause* of the deprivation of

24  the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Id*. (emphasis

25  added.)

26          Plaintiff must show that there exists a direct causal connection, *Canton v. Harris*, 489 U.S.

27  378, 387–388 (1989), without intervening factors, between the deprivation and some injury to

28  plaintiff. *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984).

14

### 3. Admissibility of Felony Convictions

For the purpose of attacking the character for truthfulness of a witness, evidence that a witness has been convicted of a crime that was punishable by imprisonment in excess of one year shall be admitted subject to Federal Rule of Evidence 403. Fed. R. Evid. 609(a)(1); see e.g., Untied States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1983) (finding that trial court properly determined that probative value of seventeen-year old conviction outweighed its prejudicial effect when needed to resolve significant conflict between defendant and the government's chief witness).

The presumption under Rule 609(a) is that the term "evidence" encompasses the essential facts of the conviction, including the statutory name of each offense, the date of conviction, and the sentence imposed. United States v. Estrada, 430 F.3d 606, 615-16 (2d Cir. 2005); *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (stating that impeachment with prior convictions is generally limited to the crime charged, the date, and the disposition); see also, 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.20[2] at 609-57 (2d ed. 2005) ("When a prior conviction is admissible for impeachment, the impeaching party is generally limited to establishing that bare facts of the conviction; usually the name of the offense, the date of the conviction, and the sentence.").

### 4. Qualified Immunity

Government officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The purpose of the rule is to permit officials to undertake their responsibilities without fear that they will be held liable in damages for actions that appear reasonable at the time, but are later held to violate statutory or constitutional rights. Id. at 819. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made" and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces." *Estate of Ford v. Ramirez Palmer,* 301 F.3d 1043, 1049 (9th Cir. 2002) (citing *Saucier v. Katz,* 533 U.S. 194, 205 (2001)). Thus, "regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff

15

was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir. 1991).

In *Saucier,* the Supreme Court set forth a two-part inquiry to determine whether the immunity exits. The initial inquiry, or first prong, is whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show that the officer's conduct violated a constitutional right." *Saucier,* 533 U.S. at 201. If, and only if, a violation can be made out, the next step, or second prong, is to ask whether the "right was clearly established." *Id.* If the right was clearly established at the time of the alleged incident, the court must then determine whether, "under that law, could a reasonable state official have believed his conduct was lawful" *Id.* at 202; *Jeffers v. Gomez,* 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Browning v. Vernon,* 44 F.3d 818, 822 (9th Cir. 1995)). Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (citation and internal quotation marks omitted).

"The linchpin of qualified immunity is the reasonableness of the official's conduct." *Rosenbaum v. Washoe County,* 654 F.3d 1001, 1006 (9th Cir. 2011). Reasonableness is judged against the backdrop of law at the time of the conduct at issue. *Brouseau v. Haugen,* 543 U.S. 194, 198 (2004); *Wilson v. Layne,* 526 U.S. 603, 614 (1999). Thus, the reasonableness inquiry must be undertaken in light of the specific context of the case and not as a general, broad proposition. *Saucier,* 533 U.S. at 202; *Kennedy v. Ridgefield,* 439 F.3d 1055, 1065-66 (9th Cir. 2006). Qualified immunity allows ample room for mistaken judgments—regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact"—and applies even when wrongful conduct occurs. *Richardson v. McKnight,* 521 U.S. 399, 403 (1997); *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). The court has the discretion, based on the circumstances of the particular case at hand, to decide whether the two-part inquiry is worthwhile or if a determination can be made by analyzing a single prong of the immunity inquiry. *Pearson* at 236.

### 5.  Punitive Damages

Punitive damages are available in a § 1983 action only when a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous

16

indifference to the federally protected rights of others.  *Smith v. Wade*, 461 U.S. 30, 51 (1983). A finding that a defendant is not protected by qualified immunity does not automatically mean that punitive damages should be awarded.  *Hernandez-Tirado v. Artau*, 874 F.2d 866, 870 (1st Cir. 1989). Nor is it enough that a defendant may have acted in an objectively unreasonable manner; his subjective state of mind must be assessed. *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). Where there is no evidence that a defendant acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). The plaintiff alleging a § 1983 claim has the burden of proving that punitive damages should be awarded by a preponderance of the evidence. *Dang v. Cross,* 422 F.3d 800, 807 (9th Cir. 2005) (citing Model Civ. Jury Instr. 9th Cir. 7.5 (2004)).

**ANY CAUSES OF ACTION NOT LISTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW ARE DISMISSED AND DEEMED WAIVED.**

XI.        ABANDONED ISSUES

None.

XII.        WITNESSES

Plaintiff's witnesses shall be those listed in Attachment A.[5]  Defendants' witnesses shall be those listed in Attachment B.  Each party may call any witnesses designated by the other. Plaintiff timely moved for the appearance of witness Joshua Howard (Doc. 238), and the Court granted Plaintiff's motion (Doc. 240).  Plaintiff additionally indicated in his motion that Mr. Howard prefers to testify remotely.  Doc. 238 at 5.  After discussion with the parties, the Court denies this request without prejudice based on plaintiff's failure at this time to show good cause. The assigned magistrate judge set deadlines and fees for the attendance of Plaintiff's remaining non-incarcerated witnesses, and those fees are due December 23, 2024.  Doc. 240.  The assigned magistrate judge will issue an order addressing the status of Plaintiff's witnesses once that deadline passes.

///

---

[5]  Plaintiff separately filed his list of proposed witnesses.  Doc. 239.

17

**The Court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria**:

1. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference; or

2. The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph 3, below.

3. Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the Court and opposing parties of the existence of the unlisted witness so the Court may consider whether said witness shall be permitted to testify at trial.  The witness will not be permitted unless:

   a. The witness could not have reasonably been discovered prior to the discovery cutoff;

   b. The Court and opposing parties were promptly notified upon discovery of the witness;

   c. If time permitted, the party proffered the witness for deposition; and

   d. If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XIII.     EXHIBITS, SCHEDULES, AND SUMMARIES

Plaintiff's exhibits are listed in **Attachment C**. Defendants' exhibits are listed in **Attachment D**.  The parties must prepare four (4) separate exhibit binders for use by the Court at trial, with a side tab identifying each exhibit in accordance with the following specifications:

1. Plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.).

2. Defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX-201, etc.) and shall be separated by tabs.

3. Joint exhibits shall be pre-marked with the prefix "JT" and numbered sequentially

beginning with 1 (e.g., JT-1, JT-2, etc.), and Defendants' counsel shall submit the original and two (2) copies of the joint trial exhibits, with exhibit lists and separated by tabs.

4. Exhibits that are multiple pages shall be marked with page numbers in addition to the prefix and exhibit number, on each page of the exhibit (e.g., PX-100, page 1 of 2, PX-100, page 2 of 2, etc.).

5. Each binder shall have an identification label on the front and spine.

**The parties shall submit their exhibit binders to Courtroom Deputy Victoria Gonzales no later than February 18, 2025.**

6. **Exchange of Trial Exhibits**

The parties shall also serve one (1) copy of all trial exhibits, along with their exhibit list, on each other no later than **January 21, 2025,** and any objections thereto are due no later than **February 4, 2025**. This includes any demonstrative evidence the parties intend to use.

7. **Use of Undisclosed Exhibits**

**The Court does not allow the use of undisclosed exhibits for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

b. The exhibit was discovered after the issuance of this order **and** the proffering party makes the showing required in paragraph a, below.

c. Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the Court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the Court may consider their admissibility at trial. The exhibits will not be received unless the proffering party demonstrates:

d. The exhibits could not have reasonably been discovered earlier;

e. The Court and the opposing parties were promptly informed of their

19

existence; and

      f.    The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied, the proffering party must show that it has made the exhibits reasonably available for inspection.

## XIV.      DISCOVERY DOCUMENTS

The following is a list of discovery documents that the parties expect to offer at trial.  **NO DISCOVERY DOCUMENTS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."**  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

Plaintiff's Proposed Discovery to be Proffered at Trial[6]:

1. Plaintiff's May 18, 2017 deposition.
2. Interrogatories of Defendant Montanez (June 21, 2017).
3. Interrogatories of Defendant G. Arellano (June 27, 2017).
4. Interrogatories of Defendant Mayfield (June 25, 2017).
5. Interrogatories of Defendant E. Barron (June 27, 2017).
6. Interrogatories of Santa Maria (June 21, 2017).
7. Interrogatories of DeLuna (June 28, 2017).
8. Interrogatories of Defendant Moreno (June 21, 2017).
9. Interrogatories of defendant S. Lomas (June 26, 2017).
10. Interrogatories of Kilmer.
11. Interrogatories of Holland (June 21, 2017).
12. Interrogatories of defendant O. Delgado (June 28, 2017).
13. Interrogatories of defendant Hollis Bennett (June 7, 2016).

---

[6]  Plaintiff's final pretrial statement refers to an Appendix B containing his discovery documents, but no Appendix B is attached to his pretrial statement.  Plaintiff's discovery documents listed in this section were identified the previous final pretrial order.  Doc. 137 at 6–7.

14. Interrogatories of defendant V. Moore (June 8, 2016).

15. Interrogatories of defendant C. Martinez (June 27, 2017).

16. Interrogatories of defendant A. Martinez (June 22, 2017).

17. Interrogatories of defendant J. Gonzales (June 20, 2017).

18. Interrogatories of defendant D. King (June 26, 2017).

19. Interrogatories of defendant C. Casillas (June 25, 2017).

20. All interrogatories of defendant A. Holguin.

21. Preliminary hearing transcript, People v. McCoy (2016).

22. Plaintiff's interrogatories.

23. Deposition of plaintiff (date unknown).

Defendants' Proposed Discovery to be Proffered at Trial:

1. Defendants indicate in their pretrial statement they intend to introduce excerpts of Plaintiff's deposition testimony at trial.  Doc. 241 at 11.

The parties must lodge with the Clerk of Court, no later than **February 18, 2025**, a copy of any deposition transcript to be used at trial.

XV.    FURTHER DISCOVERY OR MOTIONS

Plaintiff does not indicate in his pretrial statement that he intends to file any additional motions.  Plaintiff seeks as additional discovery the medical records of A. Holguin from March 12, 2015.  That request will not be granted.  Discovery and law and motion are closed in this action pursuant to the Court's previously issued scheduling orders.

Defendants intend to file motions in limine but do not anticipate filing any other pretrial motions.  Defendants indicate that they may move for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the close of Plaintiff's case in chief and before the case is submitted to the jury.

XVI.    STIPULATIONS

Defendants are willing to stipulate to the authenticity of Plaintiff's unaltered records from his central and medical files maintained by CDCR and any CDCR record generated and maintained in the regular course of business, which may be used as exhibits at trial.  Defendants

1    reserve the right to object to such exhibits on other grounds.

2        XVII.    AMENDMENTS/DISMISSALS

3        None.

4        XVIII.   SETTLEMENT

5        The parties participated in a settlement conference on February 26, 2021, which resulted

6    in an impasse.  Doc. 142.  A settlement conference scheduled for December 15, 2021, was

7    cancelled due to Plaintiff's decision not to participate.  Doc. 174.  Defendants do not believe that

8    further settlement negotiations would be productive or beneficial.  Plaintiff believes that further

9    settlement negotiations or a settlement conference "would be helpful."  The parties will notify the

10   Court if they believe a further settlement conference before a magistrate judge prior to trial would

11   be useful.

12       XIX.    JOINT STATEMENT OF THE CASE

13       The Court has drafted the following neutral statement of the case to be read to the

14   prospective jurors:

15           Plaintiff alleges that certain Defendants used excessive force
             against him on March 12, 2015, and that other defendants failed to
16           protect him from such use of excessive force.  Plaintiff alleges
             violations of the Eighth Amendment under 42 U.S.C. § 1983.
17           Defendants deny Plaintiff's allegations.  Defendants contend the
             force used was necessary.
18

19       XX.     SEPARATE TRIAL OF ISSUES

20       There will be no separate trial of issues in this action.  However, the Court will bifurcate

21   the trial with respect to the amount of punitive damages, if necessary.  Should a jury find punitive

22   liability in the first phase of the trial, the trial will proceed to a second phase which will consist of

23   any evidence and argument with respect to the appropriate amount of punitive damages.  The

24   parties may not present evidence regarding the amount of punitive damages until the second

25   phase of the trial.

26       XXI.    IMPARTIAL EXPERTS

27       None.  Defendants have retained and disclosed expert witness John Diaz.

28

                                    22

XXII.     ATTORNEYS' FEES

Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

Defendants will seek costs as appropriate, but not attorney's fees.

XXIII.    TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

Defendants do not anticipate any special handling of exhibits of trial exhibits pursuant to Local Rule 138(e).

Pursuant to the Court's policy, at the end of the trial the Court will return all exhibits to the proffering party to be retained during the pendency of any appeals.

XXIV.    MISCELLANEOUS

Plaintiff indicates that he will move for a default against defendant Holguin for failure to properly execute his interrogatories. However, any such motion would be untimely as discovery and law and motion are closed in this action pursuant to the Court's scheduling order.

XXV.     ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is set for **February 25, 2025, at 8:30 a.m. in Courtroom 6** before District Judge Kirk E. Sherriff.  Trial is anticipated to last 10–12 court days.

A trial confirmation hearing is set for **February 18, 2025, at 3:00 p.m. in Courtroom 6**.

XXVI.    PROPOSED JURY VOIR DIRE, JURY INSTRUCTIONS, AND VERDICT FORM

1.  **Proposed Jury Voir Dire**

The parties shall file any proposed jury voir dire by **February 11, 2025**.  Each party will be limited to twenty minutes of jury voir dire, unless they show good cause for additional time.

2.  **Proposed Jury Instructions and Proposed Verdict Form**

a.  The Court directs the parties to meet and confer, if possible, to generate a joint set of jury instructions and a joint verdict form.  The parties shall file any such joint set of instructions by **February 11, 2025**, identified as "Joint Proposed Jury Instructions."  The parties shall file any agreed upon verdict form as a "Joint Proposed Verdict Form."  If the parties cannot

23

agree upon certain specific jury instructions and/or the verdict form,
Defendants shall file proposed jury instructions and a proposed verdict
form as provided in Local Rule 163 by **February 11, 2025**.  Plaintiff is not
required to file proposed jury instructions or a proposed verdict form, but if
he wishes to do so, he must file them by **February 11, 2025**.

b. The parties shall indicate on any proposed jury instructions or proposed
verdict form the party submitting the proposed instructions or verdict form
(i.e., Joint, Plaintiff's, or Defendants').

c. The parties shall also include on all proposed jury instructions the
following:

    i. The number of the proposed instruction in sequence.

    ii. A brief title for the instruction describing the subject matter.

    iii. The complete text of the instruction.

    iv. The legal authority supporting the instruction.

    v. The parties shall, by italics or underlining, designate any
modification from statutory or case authority, or any pattern or form
instruction, or any other source of pattern instructions.

    vi. The parties must specifically state the modification made to the
original form instruction and the legal authority supporting the
modification.

    vii. All blanks in form instructions should be completed and all
brackets removed.

d. Ninth Circuit Model Jury Instructions shall be used where the subject of
the instruction is covered by the model instructions, including for all
standard instructions.  State model jury instructions, such as BAJI or CACI
instructions, shall be used where applicable as to state law claims.  The
parties shall designate, by italics or underlining, any proposed modification
of instructions from any pattern instruction, such as the Ninth Circuit

Model Civil Jury Instructions or other pattern instructions, or from statutory or case authority.  The parties must specifically state the modification made to the standard instruction and the legal authority supporting the proposed modification.  All instructions shall be short, concise, understandable, and neutral and accurate statements of the law.  Argumentative instructions will not be given and must not be submitted.

e.  The parties shall e-mail two copies of their proposed jury instructions to vgonzales@caed.uscourts.gov no later than **February 11, 2025**.  One set shall indicate the party proposing the instruction, with each instruction numbered, and shall cite supporting authority.  The other set shall be an exact copy of the first set but shall be a "clean" copy that does not contain the identification of the offering party, the instruction number, supporting authority, or any reference to the Court's disposition of the proposed instruction.

3.  **Objections to proposed jury instructions**

a.  The parties must file any objections to proposed jury instructions by **February 18, 2025**.  Each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority.  When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXVII.   TRIAL BRIEFS

The parties are relieved of their obligation under Local Rule 285 to file a trial brief.  If any party wishes to submit a trial brief, they must do so by **February 18, 2025**.

XXVIII.   USE OF ELECTRONIC EQUIPMENT IN COURTROOM

Any party wishing to receive an overview or tutorial of the court's electronic equipment must contact the Courtroom Deputy Victoria Gonzales at (559) 499-5676 or vgonzales@caed.uscourts.gov at least three (3) weeks before the start of trial to schedule a

25

1  tutorial session at a time convenient to the court's information technology staff.  The parties need

2  to coordinate so everyone who is interested can attend the IT conference as the court will hold

3  only one conference per case.  The parties and counsel shall confer and advise the courtroom

4  deputy of the date and time that has been agreed upon.  Counsel will not be provided any training

5  on the day of or during the trial.  The electronic equipment and resources available for this trial

6  may differ from the equipment and resources available in other courtrooms and may even differ

7  from the equipment and resources available in this courtroom at another time.  It is the

8  responsibility of the parties to familiarize themselves with the equipment and resources available

9  for use in this trial prior to the commencement of trial.  If any party is unfamiliar with the

10  equipment and resources available for use in this trial, that party may be ordered to proceed

11  without the aid of such equipment and resources and/or may be sanctioned for any fees, costs, or

12  expenses associated with any delay.

13  XXIX.    OBJECTIONS TO PRETRIAL ORDER

14  Written objections to the pretrial order, if any, must be filed within 10 days from the date

15  of service of this order. Such objections shall specify the requested modifications, corrections,

16  additions, or deletions.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    XXX.    COMPLIANCE WITH PRETRIAL ORDER

2          Strict compliance with this pretrial order and its requirements is mandatory.  The Court

3    will enforce the requirements of this pretrial order, and counsel and parties are subject to

4    sanctions for failure to comply fully with this order and its requirements.  The Court will modify

5    the pretrial order "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  The Court

6    ADMONISHES the parties and counsel to obey the Federal Rules of Civil Procedure, the Local

7    Rules, and the Court's orders.  Failure to do so will make the parties and/or counsel subject to

8    sanctions.

9

10   IT IS SO ORDERED.

11      Dated:   December 13, 2024

12                                                        UNITED STATES DISTRICT JUDGE

**ATTACHMENT A: Plaintiff's Witnesses**

|   | Individual | Fact v. Expert | Contact Information |
|---|---|---|---|
| 1. | Joshua Howard | Fact | c/o Kern Valley State Prison |
| 2. | William Coleman | Fact | Unknown |
| 3. | Maybren Johnson | Fact | Unknown |
| 4. | Dr. Steven Yaplee | Fact | Triangle Eye Institute<br><br>9700 Brimhall Rd.<br><br>Bakersfield, CA 93312 |
| 5. | J. Gutierrez (former Correctional Officer) | Fact | c/o California Correctional Institution |
| 6. | Santa Maria | Fact | c/o California Correctional Institution |
| 7. | Holland | Fact | Unknown |
| 8. | Kilmer | Fact | c/o California Correctional Institution |
| 9. | Rachel DeLuna | Fact | c/o California Correctional Institution |
| 10. | Abel Garcia | Fact | c/o California Correctional Institution |

| 11. | Daniel Verduzco | Fact | c/o California Correctional Institution |
|---|---|---|---|
| 12. | K. Westergren | Fact | c/o California Correctional Institution |
| 13. | J. Gutierrez (former Associate Warden) | Fact | c/o California Correctional Institution |
| 14. | J. Jones | Fact | c/o California Correctional Institution |
| 15. | L. Cardenas | Fact | c/o California Correctional Institution |

29

**ATTACHMENT B: Defendants' Witnesses**

|     | Individual | Fact v. Expert | Contact Information |
| --- | --- | --- | --- |
| 1. | O. Delgado | Fact | c/o California Correctional Institution |
| 2. | C. Martinez | Fact | c/o California Correctional Institution |
| 3. | G. Arellano | Fact | c/o California Correctional Institution |
| 4. | V. Moore | Fact | c/o California Correctional Institution |
| 5. | B. Mayfield | Fact | c/o California Correctional Institution |
| 6. | R. Montanez | Fact | c/o California Correctional Institution |
| 7. | H. Bennett | Fact | c/o California Correctional Institution |
| 8. | E. Barron | Fact | c/o California Correctional Institution |
| 9. | J. Gonzales | Fact | c/o California Correctional Institution |
| 10. | A. Martinez | Fact | c/o California Correctional Institution |

| 11. | A. Holguin | Fact | c/o Jeremy Duggan<br>Office of the Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814<br>916-210-6008<br>Email: Jeremy.Duggan@doj.ca.gov |
|-----|------------|------|------|
| 12. | A. Moreno | Fact | c/o California Correctional Institution |
| 13. | S. Casillas | Fact | c/o Jeremy Duggan<br>Office of the Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814<br>916-210-6008<br>Email: Jeremy.Duggan@doj.ca.gov |
| 14. | S. Lomas | Fact | c/o California Correctional Institution |
| 15. | R. DeLuna | Fact | c/o California Correctional Institution |
| 16. | D. King | Fact | c/o California Correctional Institution |
| 17. | E. Barajas | Fact | c/o California Correctional Institution |
| 18. | A. Garcia | Fact | c/o California Correctional Institution |
| 19. | J. Gonzales | Fact | c/o California Correctional Institution |
| 20. | J. Jones | Fact | c/o California Correctional Institution |

| 21. | D. Crounse | Fact | c/o California Correctional Institution |
|---|---|---|---|
| 22. | D. Calvillo | Fact | c/o California Correctional Institution |
| 23. | T. Diaz | Expert | c/o Jeremy Duggan<br>Office of the Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814<br>916-210-6008<br>Email: Jeremy.Duggan@doj.ca.gov |
| 24. | R. Wilson | Expert | c/o Jeremy Duggan<br>Office of the Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814<br>916-210-6008<br>Email: Jeremy.Duggan@doj.ca.gov |
| 25. | Custodian of Records for CDCR | Fact | c/o California Correctional Institution |

**ATTACHMENT C:  Plaintiff's Exhibits**

| Ex. | Description | Beginning Bates Nos. | Ending Bates Nos. |
|---|---|---|---|
| 1. | Medical Records of A. Holguin | | |
| 2. | Medical Reconciliation Reports | | |
| 3. | Physicians' Orders CDC 7221 | | |
| 4. | Patient Care Tracking Records CDCR 7882 | | |
| 5. | Health Care Services Request Forms CDC 7362 | | |
| 6. | Interdisciplinary Progress Notes CDC 7230 | | |
| 7. | Chronic Care Progress Notes 7419 | | |
| 8. | Encounter Forms | | |
| 9. | Initial Health Screenings CDCR 7277 | | |
| 10. | Health Care Services Physician Requests for Services CDC 7243 | | |
| 11. | Hearing Test Results | | |
| 12. | Dental History Records CDCR 7443 | | |
| 13. | Dental Examination and Treatment Plans CDCR 237-B | | |
| 14. | Supplemental Dental Examination and Treatment Plans CDCR 237-B-1 | | |
| 15. | Periodontal Charts CDCR 7431 | | |
| 16. | Supplemental Dental Progress Notes CDCR 237-C-1 | | |
| 17. | Dental Pain Profiles CDCR 237-F | | |
| 18. | Photos of Plaintiff | | |
| 19. | Photos of Ariel Holguin | | |
| 20. | Complaint, *People v. McCoy*, MF012024A | | |
| 21. | Probable Cause Declaration | | |
| 22. | Inmate Segregation Records, CDC 114-A | | |
| 23. | District Attorney Referral Status Reports | | |
| 24. | Case Law- *Holt v. Nichols*, 1:09-cv-00800-AWI-SAB | | |
| 25. | Departmental Operation Manual Section 51030.8 - Threats | | |
| 26. | Rules Violation Reports CDC 115 | | |
| 27. | Multi-Purpose Worksheet for Inmate Conduct/Information Documentation CDC 115 | | |
| 28. | Administrative Contact Reports | | |
| 29. | Chrono 5 CDC 128-C | | |

| | | | |
|---|---|---|---|
| 30. | Primary Care Provider Progress Notes, CDCR 7230-M | | |
| 31. | Triage and Treatment Services Flow Sheet CDCR 7464 | | |
| 32. | X-ray Mandible Fracture Results | | |
| 33. | Triangle Eye Institute Medical Reports/Records | | |
| 34. | Mail Logs | | |
| 35. | Declarations of Plaintiff Lakeith McCoy | | |
| 36. | Declarations of Daniel Verduzco | | |
| 37. | Statements from Plaintiff dated March 13, 2015 | | |
| 38. | CDCR Memorandum Dated 2-22-2016 to: Brandon Stallings | | |
| 39. | Crime/Incident Reports 837-A | | |
| 40. | Crime/Incident Reports 837-A1 | | |
| 41. | Crime/Incident Reports 837-B1 | | |
| 42. | Crime/Incident Reports 837-B2 | | |
| 43. | Crime/Incident Reports 837-C | | |
| 44. | Crime/Incident Reports 837-C1 | | |
| 45. | Crime/Incident Reports 837-C2 | | |
| 46. | Medical Reports of Injuries or Unusual Occurrences | | |
| 47. | Multi-purpose Worksheets for Inmate Conduct/Information Documentation | | |
| 48. | Chronos CDC 128 B | | |
| 49. | CCI Holding Cell Logs | | |
| 50. | Employee's Reports to Supervisor of Job-Related Injury/Illness IIPP Form 6 | | |
| 51. | Occupational Illness or Exposure Investigation Reports IIPP Form 5b | | |
| 52. | Miranda Rights Forms | | |
| 53. | Serious Rules Violations Reports CDC 115-A | | |
| 54. | Rules Violations Reports CDC 115-C | | |
| 55. | Excerpts from Title 15 | | |
| 56. | Health Care Appeals | | |
| 57. | Inmate Request for Interviews | | |
| 58. | Inmate Appeal Assignment Notices | | |
| 59. | Inmate/Parolee Request for Interview, Item, or Service CDCR 22 | | |
| 60. | Letters from Office of Appeals | | |
| 61. | Sacramento Bee Report: Guards Accused of Cruelty, Racism | | |

| 62. | Staff Assignment Rosters | | |
|---|---|---|---|
| 63. | Preliminary Hearing Transcripts, *People v. McCoy*, MF012024A | | |
| 64. | Interrogatories of All Defendants | | |
| 65. | Inmate Interview Video, Log #CCI-FAA-15-03-0044 | | |
| 66. | Incident Report-Cover Sheets CDCR 837-A | | |
| 67. | Crime/Incident Reports- Supplement CDCR 837-A1 | | |
| 68. | Amended Administrative Contact Reports | | |
| 69. | Staff Sign-in Sheet/Time cards | | |
| 70. | Departmental Operations Manual | | |
| 71. | Inmate/Parolee Appeals CDCR 602/602-A | | |
| 72. | Letters from Division Adult Institutions | | |
| 73. | California Correctional Institution SHU/ASU Orientation Manual | | |
| 74. | Correspondence from Kern County District Attorney | | |
| 75. | Correspondence from Office of the Inspector General | | |
| 76. | Information, *People v. McCoy*, MF012024A | | |
| 77. | Civil Complaint, *LaKeith LeRoy McCoy v. CDCR et al.*, BCV-15-101024-TSC | | |
| 78. | California Code of Regulations Title 15-Crime Prevention and Corrections | | |
| 79. | Memorandum dated December 30, 2011, Secure Appeal Collection Sides and Related Matters | | |
| 80. | 2015 Special Review: High Desert State Prison, Susanville, CA | | |
| 81. | Cell/Locker Search Receipts | | |
| 82. | Inmate Property Inventory CDC 1083 | | |
| 83. | Government Claims Forms | | |
| 84. | Inmate/Parolee Appeals Tracking System Reports | | |
| 85. | Deposition, *McCoy v. CDCR*, BCV-15-101024-TSC | | |
| 86. | Interrogatory Responses from A. Holguin, *McCoy v. CDCR*, BCV-15-101024-TSC | | |
| 87. | Interrogatory Responses from CDCR, *McCoy v. CDCR*, BCV-15-101024-TSC | | |
| 88. | Inmate Segregation Profiles CDC 114-A1 | | |
| 89. | Correspondence from Medical Board of Central California Complaint Unit | | |

| 90. | Memorandums | | |
| 91. | Habeas Corpus, In Re: Daniel Verduzco, HC 014734A | | |
| 92. | Declaration of Jasper Wilson | | |
| 93. | Letter to Warden Kim Holland from Daniel Verduzco | | |
| 94. | CDC-115 of Daniel Verduzco | | |
| 95. | Miscellaneous | | |

**ATTACHMENT D:  Defendants' Exhibits**[7]

| Ex. | Description | Beginning Bates Nos. | Ending Bates Nos. |
|---|---|---|---|
| a. | Medical Report of Injury or Unusual Appearance, dated March 12, 2015 | | |
| b. | Medical Report of Injury or Unusual Appearance, dated March 12, 2015 | | |
| c. | Picture dated March 12, 2015 | | |
| d. | Picture dated March 12, 2015 | | |
| e. | Picture dated March 12, 2015 | | |
| f. | Picture dated March 12, 2015 | | |
| g. | Picture dated March 12, 2015 | | |
| h. | Picture dated March 12, 2015 | | |
| i. | Picture dated March 12, 2015 | | |
| j. | Picture dated March 12, 2015 | | |
| k. | Picture dated March 12, 2015 | | |
| l. | Picture dated March 12, 2015 | | |
| m. | Picture dated March 12, 2015 | | |
| n. | Picture dated March 12, 2015 | | |
| o. | Picture dated March 12, 2015 | | |
| p. | Picture dated March 12, 2015 | | |
| q. | Picture dated March 12, 2015 | | |
| r. | Picture dated March 12, 2015 | | |
| s. | Picture dated March 12, 2015 | | |
| t. | Picture dated March 12, 2015 | | |
| u. | Picture dated March 12, 2015 | | |
| v. | Picture dated March 12, 2015 | | |
| w. | Picture dated March 12, 2015 | | |
| x. | Picture dated March 12, 2015 | | |
| y. | Picture dated March 12, 2015 | | |
| z. | Picture dated March 12, 2015 | | |
| aa. | Holding Cell Log dated March 12, 2015 | | |
| bb. | General Chrono by D. King, dated March 12, 2015 | | |
| cc. | Rules Violation Report for Battery on a Peace Officer for incident dated March 12, 2015 | | |

---

[7]  Defendants' list of exhibits in their pretrial statement appears to have mislabeled the final five exhibits.  The instant exhibit list keeps the ordering consistent.

| | | | | |
|---|---|---|---|---|
| dd. | Rules Violation Report for Possession of an Inmate Manufactured Weapon, for Incident dated March 12, 2015 | | |
| ee. | Criminal Information, *People v. McCoy*, Bakersfield Superior Court Case No. MF012024A | | |
| ff. | Abstract of Judgment, Assault with a Deadly Weapon, *People v. McCoy*, Riverside Superior Court Case No. RIF125089, dated July 2, 2009 | | |
| gg. | Abstract of Judgment, Assault with a Deadly Weapon with Gun/False Imprisonment, *People v. McCoy*, Riverside Superior Court Case No. RIF130139, dated July 9, 2009 | | |
| hh. | Abstract of Judgment, Attempted Murder, *People v. McCoy*, Riverside Superior Court Case No. RIF130139, dated July 9, 2009 | | |
| ii. | Abstract of Judgment, Assault by a State Prisoner, April 7, 2015, *People v. McCoy*, Los Angeles Superior Court Case No. MA058865 | | |
| jj. | Rules Violation Report for Fighting, incident dated October 2, 2011 | | |
| kk. | Rules Violation Report for Possession of Dangerous Property, incident dated August 5, 2012 | | |
| ll. | Rules Violation Report for Possession of a Deadly Weapon, incident dated August 5, 2012 | | |
| mm. | Rules Violation Report for Battery on a Peace Officer with Serious Bodily Injury, Incident Date August 5, 2012 | | |
| nn. | Rules Violation Report for Fighting, incident dated December 27, 2013 | | |
| oo. | Rules Violation Report for Battery on an Inmate incident dated September 30, 2014 | | |
| pp. | Rules Violation Report for Fighting, incident dated May 26, 2017 | | |
| qq. | Rules Violation Report for Fermentation or Distillation of Materials incident dated October 12, 2017 | | |
| rr. | Rules Violation Report for Delaying a Peace Officer in the Performance of Duties, incident dated March 30, 2019 | | |
| ss. | Rules Violation Report for Delaying a Peace Officer in the Performance of Duties, incident dated August 1, 2019 | | |

| | | | | |
|---|---|---|---|---|
| tt. | Order Declaring Vexatious Litigant, *McCoy v. CDCR*, Kern County Superior Court Case No BCV-16-102728 | | | |
| uu. | Order Revoking IFP Status, *McCoy v. Holguin*, Eastern District Case No. 1:15-cv-00768-DAD-JDP | | | |
| vv. | Expert Report of Tony Diaz dated September 7, 2021 | | | |
| ww. | Expert Report of R. Wilson dated September 7, 2021 | | | |

39